IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHAD EVERETT GOINS, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.:  7:19CV00548 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, DIRECTOR, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

Chad Everett Goins ("Goins" or "Petitioner"), a Virginia inmate, filed a petition for writ of habeas corpus, by counsel, under 28 U.S.C. § 2254, challenging his 2012 felony convictions in Louisa County Circuit Court for abduction, aggravated malicious wounding, malicious wounding by mob, and conspiracy to commit malicious wounding, for which he is serving a sentence of life plus 40 years.  As explained below, all of Goins's habeas claims must be dismissed—some because they were not adequately raised before the state courts and others because the state courts' prior decisions resolving those claims were not contrary to clearly established federal law or the product of unreasonable factfinding.

## I.   Factual Background and Procedural History

On November 14, 2011, a grand jury issued a six-count indictment against Goins for abduction and conspiracy to commit abduction, in violation of Virginia Code § 18.2-47; malicious wounding by mob and conspiracy to commit malicious wounding by mob, in violation of Virginia Code § 18.2-41; and aggravated malicious wounding and conspiracy to commit malicious wounding, in violation of Virginia Code § 18.2-51.2.  Subsequently, the Commonwealth filed a motion to join Goins's case for trial with two codefendants, Sedrick

Goins (Goins's nephew, referred to as "Sedrick" from this point forward) and Jason McDonald ("McDonald"). The Commonwealth's cause for seeking joinder was that the defendants were alleged to have acted in concert in committing the crimes, and the same witnesses would be inconvenienced by having to testify in three different trials. Goins's attorney objected to the joinder, arguing that the statute permitting joinder was in derogation of common law and should be narrowly construed. Further, counsel expressed concern that Goins would be prejudiced by a joint trial because one of the co-defendants planned to call an alibi witness that counsel considered less than credible, which could adversely impact all defendants in a joint trial. Finally, because codefendant Sedrick was a minor and could only be sentenced by the court, counsel expressed concern that the jurors might be inclined to impose more punishment on the adults, to make sure that someone "paid the price" for the crime. Nevertheless, the trial court granted the motion for joinder. Tr.[1], Vol. I, at 32–67.

Prior to trial on January 18, 2012, the Commonwealth *nolle prossed* the charges for conspiracy to commit abduction and conspiracy to commit malicious wounding by mob. CCR[2] at 144. The trial lasted from January 18, 2012, through January 20, 2012. The jury convicted Goins of all four remaining charges, based on evidence that, in the light most favorable to the Commonwealth as the prevailing party, established that Goins lured the

---

[1] The transcript of some pretrial proceedings, the jury trial, and sentencing of codefendant McDonald were included in a combined three volume set, pages 1–955. All citations to those volumes will be to Tr., Vol. #, at [page numbers]. Another transcript contains pretrial and post-trial proceedings; citations to that volume will be to "Pro. Tr."

[2] References to "CCR" are to the Circuit Court record of Louisa County, Case No. CR11000371. References to the Court of Appeals record will be to "COA." The state habeas record will be referenced as "HCR."

victim, Minor, to another location, where Goins, Sedrick, McDonald, and others beat, kicked and stomped on Minor, causing him serious and permanent injuries.

The Commonwealth's primary witness, Squirrel Watson, testified that he had been playing horseshoes at Shelton's home on the afternoon of June 19, 2011, where he drank approximately six beers. After he got home, Goins and Minor came by Watson's home, where he lived with his parents, and invited Watson to go to the store with them to pick up some beer. As they travelled to the store, Watson noticed that Goins turned the car in the opposite direction from the store, and Watson asked Goins what was going on. Goins said he was avoiding the police because he had no driver's license, and he sped to Kinneytown Road and turned into a driveway. Watson saw two people inside another parked car and one person standing outside.

When Watson and Minor got out of the car, Watson testified that a group of people came towards them to confront Minor. Minor grabbed Watson's arm, but when Minor started running, McDonald released Watson's arm and joined the group of people who were chasing Minor. When the group caught up with Minor, they threw Minor on the ground, beating, kicking, and stomping him. When he heard a loud noise that he thought was a gunshot, Watson ran towards the home of Josephine Brooks, fearing that the group might come after him next. Watson then called 911 and reported that five men were beating Minor. COA at 144–45.

Deputy Jay Hensley of the Louisa County Sheriff's Office responded to the 911 call around 11:00 p.m. and found Minor incoherent in a ditch. Hensley spoke with Watson at the scene, but the assailants had already left in the car Goins was driving. Later that evening,

Minor had emergency surgery at the University of Virginia Medical Center because of traumatic brain injury. Dr. Shaffrey testified that the effects of the brain injury, including post-traumatic seizures which began a few months after the surgery and that a horseshoe shaped scar on his head from the surgery, were permanent. *Id.* at 144.

Other testimony established that Goins' sister, Terry, who was Minor's girlfriend, had been sent to the hospital earlier in the evening. McDonald had called for paramedics around 9:00 p.m., using a false name, reporting that Terry had been injured by her boyfriend in a fight. Sedrick and McDonald were both upset about this. Shelton, a trained martial arts professional fighter, testified that Sedrick was upset about Minor hurting his mother and asked Shelton to fight Minor. Shelton refused.

Dunivan testified that he heard McDonald arguing with someone on the phone, threatening to "beat [someone's] a**." Dunivan did not know who McDonald was talking about, though.

Telephone records, authenticated by the custodian from Verizon, verified a telephone call from Sedrick to Shelton that night, McDonald's phone call to 911 about Kelly's need for medical assistance, and a text message from Sedrick's phone saying "Yo, oh, I'm about to kill Steve [Minor]" around 10:45 p.m. on June 19, 2011. *Id.* at 145. On June 20, a text message was sent from Goins's phone, stating "I may be in deep [sh**] . . . Tomorrow I have to talk to my lawyer. Things are bad. I mean, really bad." *Id.*

Following the sentencing portion of the trial, the jury recommended the following sentences for Goins: 10 years for abduction, 10 years for aggravated malicious wounding, 20 years for conspiracy to commit malicious wounding, and life in prison for malicious wounding

by mob.  The trial court ordered a presentence report and scheduled the matter for a later sentencing hearing.

On April 2, 2012, Goins personally mailed a motion to set aside his verdict and grant a new trial based on several issues.  The trial court received and docketed the motion on April 5.  CCR at 207–215.  At the July 11, 2012, hearing on the post-trial motion, Goins argued that the Commonwealth had withheld potentially exculpatory evidence and that the court should have given a limiting instruction that Sedrick's text message ("I'm about to kill Steve") could only be considered against Sedrick.   On the first issue, Goins alleged he had recently discovered that police officers had seized his girlfriend's car, the car Watson had testified Goins was driving on the night of the crime, and taken a cutting of carpet from the floor. That information had never been provided by the Commonwealth,[3] nor had any resulting lab reports from analysis of the evidence.  The trial court found that Goins knew or should have known that the car was seized, yet never requested a list of items taken from the car.  Further, the trial court did not find the new evidence exculpatory or likely to change the outcome of the trial, as all defendants had already argued the lack of evidence to the jury, and one would not necessarily expect evidence in the car when the violence occurred  outside.

Regarding the limiting instruction, the court noted that the defense never requested the limiting instruction during the trial and it was too late to request it afterwards.  Additionally,

---

[3] The Commonwealth Attorney provided copies of photographs of the exterior of the car, which he had received from the police.  He was unaware of the search warrant for the car, which Detective Johnson had obtained three days after the offense and filed in Richmond, where the car's owner, a girlfriend of Goins, lived, rather than in Louisa County. Johnson represented that he did not submit anything to the lab for testing because they already had Watson's testimony.

the text was a co-conspirator statement, admissible against all defendants.  Pro. Tr. at 91–127.  After ruling against Goins on both issues, the trial court denied the motion for a new trial.

On October 29, 2012, after considering the presentence report and the testimony of defense witnesses, the trial court imposed the sentence recommended by the jury.  The court entered the final judgment order on December 3, 2012.

Goins appealed his conviction and sentence to the Court of Appeals of Virginia, raising five arguments, including that joinder was improperly granted and that the evidence was insufficient to support his conviction.  Notably, he did not appeal the trial court's decisions on the alleged after-discovered evidence or on the lack of limiting instructions.  By per curiam opinion, the court denied the appeal on September 16, 2013.  COA at 142–48.  Upon consideration by a three-judge panel, Goins's appeal was again denied on November 27, 2013.  COA at 165.  The Supreme Court of Virginia refused the appeal on July 1, 2014, and denied the petition for rehearing on October 3, 2014.  COA at 217, 219.

Goins filed his state habeas petition in the Louisa County Circuit Court on October 5, 2015, raising fifteen issues, some with numerous sub-issues.  The following state issues are relevant to the current § 2254 petition:

(a) The Commonwealth's Attorney "allowed the Commonwealth's principal witness, Robert Watson, to testify contrary to statements Watson had made to investigators and in court, prior to Chad Goins's trial and withheld this information from Goins and his counsel."  HCR at 3.

(g) Counsel failed to prepare a proper defense to aggravated malicious wounding (which requires proof of a permanent injury) because he did not subpoena or review the victim's medical records before trial. *Id.* at 4.

(j) Counsel failed to review the discovery and was unaware of the search warrant issued for the car Goins drove on the night of the crimes. *Id.* at 5.

(n) The trial court erred in joining Goins's trial with the codefendants, violating Goins's due process rights, and counsel was not properly prepared to argue the motion. *Id.* at 19–20.

The habeas file remained dormant in the Circuit Court until April 7, 2017, when the attorney representing the Commonwealth learned that Goins's counsel had been suspended indefinitely. Counsel forwarded a proposed dismissal order directly to Goins, requesting his response within 60 days. Goins filed a motion for extension of time, but then hired a new attorney in June 2017, the same attorney who represents Goins before this court. Respondent's counsel sent the proposed order to Goins's new attorney on June 5, 2017, asking that he respond with any objections within 30 days or the order would be presented to the court for entry. Counsel requested additional time to become familiar with the file; Respondent agreed. HCR at 97. The new deadline passed, and Goins's attorney never endorsed the order, forwarded objections, or responded to the Commonwealth's motion to dismiss. The Commonwealth forwarded the dismissal order to the court on August 8, 2017. On August 31, 2017, Goins wrote the court personally, requesting a ruling on his prior motion for extension that was received by the court. The court entered a final order dismissing Goins's state habeas petition and denying his motion for extension on November 22, 2017.

HCR at 217–240.  The Virginia Supreme Court summarily refused Goins's appeal on May 10, 2019, finding no error in the Court of Appeals' ruling.  HCR at 248.

Goins, by counsel, timely filed the current § 2254 petition, in which he raises the following issues:

1. Ineffective assistance of counsel for failing to argue that the police failed to recover any biological evidence from the victim in the car that Goins drove away from the scene;

2. Ineffective assistance of counsel for failing to subpoena Minor's medical records, failing to cross examine Dr. Shaffrey about his office notation that Minor was "healing well" on his post-operative visit, and failing to object to Shaffrey's testimony about Minor's epilepsy;

3. Ineffective assistance of counsel in failing to object adequately to the joinder of Goins's trial with his codefendants and failing to request cautionary instructions regarding evidence admissible against a codefendant but not against Goins;

4. Ineffective assistance of counsel in failing to object to Watson's "perjured" testimony and failing to demand that the prosecution call out and correct the "perjury" before the jury; and

5. Aggregate prejudice to Goins from multiple harmless errors.

## II. Standard of Review and Limitations on Federal Habeas

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal courts reviewing constitutional claims

adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. When reviewing a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland*. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A. Exhaustion

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Further, the petitioner must present to the state court the same operative facts and the same

controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002). Failure to do so "deprives[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

B.  Procedural Default

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

C.  Overcoming Procedural Default

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice as a result of the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the

claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

### III.    Analysis of Claims

As previously indicated, all of Goins's claims in this petition allege ineffective assistance of counsel.   To prevail on a claim of constitutional ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. Petitioner must establish both prongs of this very deferential test if the court reaches the merits of his claims.

A.  Ineffective Assistance in Failing to Argue Lack of Biological Evidence in the Car

Goins has procedurally defaulted this issue.  Although he raised a related issue in a post-trial motion, he did not raise it on appeal, and it has never been presented to the Supreme Court of Virginia for determination in the first instance.  Counsel argues that the issue was raised, inartfully, in the state habeas case when Goins alleged in claim (j) that trial counsel was ineffective in failing to review the discovery and by being unaware of the search warrant that was issued for the car.  However, being unaware of the search warrant (which was not in the discovery and the prosecutor did not know about) is a different factual allegation from failing to argue the lack of biological evidence.  As discussed earlier, exhaustion requires that a petitioner present the same facts and argue the same legal principles before the state's highest court. *Duncan*, 513 U.S. at 365–66; *Kasi*, 300 F.3d at 501–02.  That was not done in this case, and it is too late to present these arguments to the Supreme Court of Virginia now.  The court thus treats this issue as simultaneously exhausted and defaulted. *Bassette*, 915 F.2d at 936–37.

To overcome procedural default, Goins must demonstrate both cause for his default and prejudice. When a petitioner seeks federal relief for a defaulted claim of ineffective assistance of counsel at his trial, the Supreme Court applies a special test for "cause and prejudice." *Martinez v. Ryan,* 566 U.S. 1, 13–15 (2012). The Court confirmed the requirements of the *Martinez* test in *Trevino v. Thaler*, 569 U.S. 413 (2013): (1) the claim of ineffective assistance of trial counsel is a "substantial claim;" (2) the "cause" is the lack of counsel or ineffectiveness of counsel under the standards of *Strickland*, 466 U.S. at 668; (3) the state post-conviction proceeding was the first time ineffective assistance of counsel was raised; and (4) the state post-conviction proceeding was the first one in which petitioner was actually or effectively allowed by state law to raise the claim. *Trevino*, 569 U.S. at 423; *Martinez*, 566 U.S. at 13–15. Virginia is a jurisdiction that requires petitioners to raise ineffective assistance of counsel claims for the first time in state post-conviction proceedings. *Blevins v. Commonwealth*, 590 S.E.2d 365, 368 (Va. 2004). Thus, elements three and four of the *Martinez* test apply. To show cause and prejudice, Goins must establish both that the claim is a "substantial" constitutional claim and that the cause for failing to raise the issue was ineffective assistance of counsel within the meaning of *Strickland*.

A substantial claim is one that has merit. *Martinez*, 566 U.S. at 14. This claim is not substantial. First, Goins's trial counsel argued that the Commonwealth offered no evidence of Goins's involvement other than the incredible testimony of Watson. Tr., Vol. III, at 781–90. Adding that no evidence was found in the car would merely be cumulative. Failing to make a cumulative argument cannot prejudice a petitioner as required by *Strickland*, meaning that Goins could not prevail in this ineffective assistance claim even if the court considered

the claim on the merits.  *See Huffington v. Nuth*, 140 F.3d 572, 581 (4th Cir. 1998); *Hunt v. Nuth*, 57 F.3d 1327, 1333 (4th Cir. 1995) (noting that failing to impeach a witness with cumulative evidence does not prejudice the petitioner).  As the trial court observed in ruling on the post-trial motion for new trial, the absence of evidence inside the car is not particularly exculpatory because the attack did not occur in the car.  Because the issue lacks merit, Goins has failed to overcome his procedural default, and the court will dismiss this claim.

B.  Ineffective Handling of Victim's Medical Condition

Goins properly raised this issue in his state habeas claim, which he appealed to the Supreme Court of Virginia.  Because he exhausted this claim, this court must review this claim under the deferential standard set forth in 28 U.S.C. § 2254(d).

Although the Supreme Court of Virginia did not address the merits of this issue, the court had the opportunity to do so when Goins petitioned for appeal from the circuit court's habeas decision.  The opinion of the Louisa County Circuit Court is the last reasoned state court opinion; thus, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the reasoning of the circuit court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").  The deferential standard of review prescribed by § 2254(d) will apply in reviewing the circuit court's habeas opinion.

This court may only grant relief if the state court's decision was contrary to, or unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.  A decision is contrary to federal

law only if it reaches a legal conclusion that is directly opposite to a Supreme Court decision or if it reaches the opposite result from the Supreme Court on facts that are materially indistinguishable from the Supreme Court case's facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state's decision is an "unreasonable application" of federal law only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair[-]minded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). The question is not whether a federal court believes the state court's decision is incorrect, but whether the decision was unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).  The court must presume that the state court's factual findings are correct, and this presumption can be overcome only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Further, the court may grant relief only if the factual findings are unreasonable.

Review of the circuit court's habeas opinion leads to the inescapable conclusion that the court's decision was neither contrary to nor an unreasonable application of federal law or determination of facts.  The state habeas opinion began its discussion of ineffective assistance of counsel by noting the applicable Supreme Court law.  To establish defective performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Counsel's performance is measured by prevailing professional norms. Counsel is presumed to have provided adequate assistance and to have made all decisions "in the exercise of reasonable professional judgment." *Id*. at 690.  Importantly, the court must

consider counsel's performance as of the time the decisions were made, not by relying upon "the distorting effects of hindsight." *Id.* at 689–90.

The state court determined—as a matter of fact—that counsel made a strategic decision to focus on the primary issue at trial: whether Goins participated in any physical assault on the victim, not the extent of the victim's injuries. HCR at 227. Applying the above law to the facts, the court found that this strategy was a reasonable one. Because the victim suffered a prominent, permanent, horseshoe-shaped scar around his head, which constituted a permanent injury, counsel reasonably determined that arguing about the epilepsy would serve no practical purpose; the Commonwealth proved a permanent injury with or without the epilepsy. Indeed, advancing a weaker argument, especially one that theoretically contradicts the primary defense of "You have the wrong guy," would undermine the overall defense. *United States v. Terry*, 366 F.3d 312, 318 (4th Cir. 2004). One of the most important skills of an advocate is recognizing and pursuing claims with the greatest chances of success. *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014).

Finding no deficient performance, the state did not address the issue of prejudice. In order to be thorough, this court notes that nothing in the record demonstrates prejudice from failing to cross-examine Dr. Shaffrey about the victim's good progress six weeks after surgery. To establish prejudice, Goins must show that there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. The doctor testified that Minor's first seizure was several months after the surgery, and that delayed onset of seizures was a common consequence of traumatic brain injury. That Minor appeared to be doing well and had not yet had a seizure six weeks after the surgery would do nothing to

change the opinion about the later seizures being caused by the brain injury.  Thus, it is unlikely to have made any difference in the jury's decision, especially since permanent injury was already established by the permanent scar on Minor's head.

As for counsel's preparation to cross examine about epilepsy, counsel elicited information on cross examination that Minor failed to keep post-operative appointments with Dr. Shaffrey; that Minor never had a seizure in Dr. Shaffrey's presence; and that the doctor had never reviewed Minor's prior veteran's hospital and disability medical records.  Dr. Shaffrey also acknowledged that his only knowledge of Minor's seizures came from the University of Virginia neurology department records in which Minor reported having a seizure for the first time several months after the accident.  Counsel also obtained Dr. Shaffrey's concession that it was possible the seizures were caused by something other than the assault. Tr., Vol. II, at 529–32.  In sum, the record amply supports the state court's finding of no deficient performance in this cross examination, and there was no prejudice to Goins.

Because Goins has failed to demonstrate that the state court's determination of this issue is an unreasonable determination of facts or application of law, the court must deny relief on this claim.

C.  Ineffective Argument of Joinder Motion and Failure to Request Limiting Instruction

Goins has exhausted his claim that counsel's argument of the joinder motion was ineffective by raising it in his state habeas claim.  That portion of this issue will be evaluated under the normal deferential review of the state court's factual determinations and conclusions of law.  Goins, however, has not previously argued that counsel was ineffective for failing to request limiting instructions.  Although that issue is related to the joinder issue, it requires

consideration of separate facts and laws. Because exhaustion requires a petitioner to present the same facts and to argue the same legal principles before the state's highest court, this portion of his claim is procedurally defaulted. *Duncan*, 513 U.S. at 365–66; *Kasi*, 300 F.3d at 501–02. The court will review this claim to determine if Goins can overcome his procedural default.

### 1. Alleged Ineffective Joinder Argument

The federal court can grant relief on this claim only if the state court's determination of the issue was contrary to or an unreasonable application of *Strickland* or based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The state habeas court held that counsel was prepared and effectively argued several grounds of objections to joinder. HRC at 236. After reviewing the transcript of the argument (Tr., Vol. I, at 32–67), this court agrees that state court's factual findings are abundantly reasonable. The state court further noted that Goins had not alleged any meritorious arguments that counsel could have raised but failed to. This observation, combined with the state court's decision on direct appeal that joinder had been properly granted under state law, negates any prejudice to Goins from the manner in which counsel argued the objections to joinder. The state court's decision on both performance and prejudice was a reasonable determination of facts and application of law. Accordingly, the court must dismiss this claim.

### 2. Failure to Request Limiting Instructions

Because this defaulted claim alleges ineffective assistance of counsel, and such claims can only be filed for the first time in state post-conviction proceedings, Goins can overcome the default under *Martinez* only if his state habeas counsel was ineffective within the meaning

of *Strickland* and the constitutional issue is substantial—that is, has some merit.  As discussed below, the court finds that this issue lacks merit and is not substantial and therefore the court need not address whether state habeas counsel was ineffective.[4]

Goins identifies seven statements/incidents involving either Sedrick or McDonald that were prejudicial to him:  (1) Sedrick's request that Shelton fight Minor; (2) Shelton's refusal of that request; (3) Sedrick being upset because of an earlier incident between Sedrick's mother and Minor; (4) Sedrick's text message, "I'm bout to kill Steve"; (5) McDonald's call to 911 alleging that Kelly [Goins] had been beaten by her boyfriend; (6) McDonald giving a false name during that phone call; and (7) McDonald threatening on the phone to come "beat that n******'s ass."  Pet. at 15.

Goins's contention that he was entitled to a limiting instruction is legally erroneous.  To be entitled to a limiting instruction, Goins would have to demonstrate that the above evidence was not admissible against him.  *Barnes v. Commonwealth*, 470 S.E.2d 579, 582 (Va. Ct. App. 1996).  Goins and his codefendants were charged, tried, and convicted for conspiracy, among other offenses.  Conspiracy is an agreement between two or more people to act in concert to commit an offense.  When the Commonwealth has introduced evidence of a conspiracy, including circumstantial evidence, both statements and actions of a co-conspirator in furtherance of the conspiracy are admissible as substantive evidence against each member of the conspiracy, if relevant, even if the statements would otherwise be hearsay.  *Rabeiro v.*

---

[4] As noted in the factual and procedural history, Goins's current attorney was retained for the state representation more than a year after the state petition had been filed because Goins's original habeas attorney had been disbarred.  By the time Goins had new counsel, any new claims were time-barred.  An amended state petition would not have helped him, as new claims cannot be filed after the statute of limitations has run, even when leave is granted to file an amended petition.  *Juniper v. Warden of Sussex I State Prison*, 707 S.E.2d 290, 295–96 (Va. 2011).

*Commonwealth*, 389 S.E.2d 731, 733 (Va. Ct. App. 1990); *Stultz v. Commonwealth*, 369 S.E.2d 215, 217 (Va. Ct. App. 1988). Sedrick asking Shelton to fight Minor was clearly in furtherance of the conspiracy to wound Minor, and it is admissible against each member of the conspiracy.

McDonald's phone call to 911 and his use of a false name during that phone call were not hearsay; they were not offered to prove that Kelly Goins had, in fact, been beaten by her boyfriend or that McDonald's name was not really McDonald. Rather, they were relevant evidence of McDonald's state of mind, to explain his subsequent actions, and part of the res gestae of the crime. *Jones v. Commonwealth*, 650 S.E.2d 859, 866–67 (Va. Ct. App. 2007); *Karnes v. Commonwealth*, 99 S.E.2d 562, 564–65 (Va. 1919). Likewise, McDonald's telephone statement about coming to beat someone, in its language and tone, constituted an excited utterance, admissible under an exception to the hearsay rule. *Synan v. Commonwealth*, 795 S.E.2d 464, 469 (Va. Ct. App. 2017). Evidence that Sedrick was upset about an incident between Minor and his mother was likewise state-of-mind evidence, and his text message immediately before the assault falls within a number of these exceptions as well.

Goins apparently argues that he is prejudiced because this evidence directly implicates the codefendants, not him. But a conspirator may be held criminally liable for acts of his coconspirator even if he did not know of those actions. *Zuniga v. Commonwealth*, 375 S.E.2d 381, 387 (Va. Ct. App. 1988). If the Commonwealth has introduced evidence, circumstantial or otherwise, that a conspiracy existed, then evidence relevant against one conspirator can be admitted against all. Because there were grounds upon which the court could have admitted all the above evidence against Goins based upon the concerted action of the defendants and

co-conspirators, Goins was not entitled to a limiting instruction.  In sum, this claim lacks merit, and Goins has not overcome his procedural default. The court must also dismiss this claim.

D.  Ineffective for Failing to Object to Watson's Perjured Testimony

In his state habeas, Goins raised this issue as a due process issue under *Brady v. Maryland*, 373 U.S. 83 (1963).  The state court found that the issue was procedurally defaulted because Goins knew or should have known enough facts to raise the issue at trial or on direct appeal. HRC. At 221.  Further, because Watson's prior statements had already been provided to defense counsel via email before the trial, the due process claim was without merit.  *Id.* at n.4. Because Watson's prior statements had been provided to counsel, Goins now alleges that trial counsel was ineffective because he "failed to object to Watson's testimony and move to require the prosecution to correct Watson's lying under oath" in front of the jury.  This is a different issue from the one raised before the state court and has not been previously raised.  Therefore, it is procedurally defaulted.  Because the defaulted issue alleges ineffective assistance of trial counsel, the *Martinez* analysis applies to determine whether Goins can overcome his procedural default.  For the reasons discussed below, he cannot.

As petitioner alleged in his direct appeal, Watson's testimony contained internal inconsistencies as well as contradictions of his prior statements.  Counsel for all three defendants cross examined Watson about those inconsistencies.  In closing arguments, codefendants' counsel argued the inconsistencies in Watson's testimony and prior statements and his intoxication when observing the events to suggest that Watson really did not know what happened with any level of accuracy.  Goins's counsel went further, arguing that Watson was lying and had something to hide. Tr., Vol. III, at 781.  It is inconceivable that the jury did

not know that Watson initially said Craig Johnson was one of the assailants and later said that he was not.  Indeed, the Commonwealth's Attorney brought that out on direct examination. Tr., Vol. I, at 278–79.  The prosecutor also provided counsel the prior statements, so that counsel could use inconsistencies for impeachment.

And Goins's trial counsel amply impeached Watson.  That his questions did not include the two specific inconsistencies raised in the petition does not render counsel's performance ineffective.  Questions to ask on cross examination are matters of trial strategy for counsel to make within his professional discretion.  *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) (noting that "the lawyer has—and must have—full authority to manage the conduct of the trial . . . and . . . the client must accept the consequences of the lawyer's decision to forgo cross-examination"). In evaluating the attorney's performance in matters of trial strategy, broad deference is given to the attorney.  Counsel is presumed to have acted with the client's best interests in mind, and performance must be viewed from counsel's perspective at the time of trial, not based on hindsight.  *Strickland*, 466 U.S. at 689–90.  That additional questions may have been helpful does not mean counsel was ineffective for failing to ask them.  A defendant is entitled to a fair trial, not a perfect one.  *United States v. Hastings*, 461 U.S. 499, 508–09 (1983).  Because there is no evidence that counsel's performance was deficient, and no evidence that two more examples of Watson's inconsistency (besides those already elucidated through cross examination) would likely have resulted in a different outcome, this claim for ineffective assistance of counsel is without merit.

The claim that counsel should have demanded that the Commonwealth's Attorney inform the court and jury that Watson was lying must also fail.  A prosecutor violates *Napue*

*v. Illinois*, 360 U.S. 264 (1959), only by "*knowingly* offering or failing to correct false testimony"

on a material matter.  *United States v. Chavez*, 894 F.3d 593, 601 (4th Cir. 2018) (emphasis in

original).  At trial, the Commonwealth's Attorney endeavored to correct Watson's inaccuracies

during the direct examination, for example:

> Q. . . .[W]hen you made that call, how many people did you state
> were beating on Mr. Minor?
>
> A.  I seen three people.
>
> Q.  All right, but how many did you say in the call?  Did you say
> more or did you say, like, ten?
>
> A.  Like, five.
>
> Q.  Five or ten?
>
> A.  There was five.
>
> Q. There—there were five there.
>
> A.  Right.
>
> Q.  Do you remember what you said in the call?
>
> A.  Right, there was five of them.
>
> Q.  There was five of them.
>
> A.  Yeah.

Tr., Vol. I, at 277–78.  The Commonwealth also brought out that Watson initially told police,

specifically Deputy Hensley, that Craig Johnson was involved, and later said Craig Johnson

was not involved.  *Id.* at 278.  Later, on cross-examination, Watson denied telling Deputy

Hensley that "Craig Johnson began fighting Steve Minor" (even though he had already testified

on direct that he did implicate Johnson).  Counsel asked if Hensley's expected testimony to

that effect would be a lie; Watson responded, "Like I said, I make mistakes.  I'm not perfect." There was nothing for the prosecution to correct, as the Commonwealth had already procured Watson's testimony that he told the officers two different things about Craig Johnson. Likewise, the prosecution asked Watson if he had spoken to Johnson in between the two different statements, and Watson said "no."  *Id.* at 278–79.  The Commonwealth did not ask Watson if Johnson ever confronted him or if he had ever claimed that he changed his story because Johnson confronted him.  Perhaps the defense could have cross-examined Watson about that, but it was reasonably focused on Watson's many other inconsistencies.

Like many witnesses, Watson clearly had inconsistencies within his testimony, between his testimony and earlier statements, and between his earlier statements.  Watson was also under the influence of alcohol at the time of the offense and had a poor memory for details. The Commonwealth provided Watson's prior inconsistent statements to counsel, and many of these prior statements were used to impeach him.  There is no evidence that Watson's inconsistencies were perjurious rather than mistakes related to a faulty memory.  Nor is there any reasonable basis to conclude that the Commonwealth's Attorney *knowingly* presented *perjured* testimony, and thus there is no reasonable justification for defense counsel to demand that the Commonwealth declare its own witness a liar before the jury.

Nor is there any improper prejudice to the defense.  The Commonwealth brought out the most important inconsistencies during the direct examination and had provided the prior inconsistent statements to counsel as well, thereby fully discharging his *Brady* duties.  All three defense attorneys emphasized these inconsistencies during closing argument, and particularly, Goins's counsel argued that Watson's testimony could not be believed.

Because there is neither deficient performance nor prejudice, this claim has no merit, and Goins cannot overcome his procedural default.  The court will dismiss this claim.

E.  Cumulative Prejudice

Goins's final claim is that he suffered cumulative prejudice because of the combined errors of counsel alleged above.  Before such effects can be considered, there must first be constitutional error.  Because the court found no such error, there can be no cumulative effects of such error.  *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998).  Further, the Fourth Circuit Court of Appeals has explicitly rejected cumulative-error analysis in this Circuit.  Accordingly, this claim will also be dismissed.

## IV. Conclusion

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability.  Fed. R. Gov. § 2254 Cases 11(a).  A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a

constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). Goins has not made such showings in this case, the court will not issue a certificate of appealability.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTERED** this 10th day of March, 2021.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE